670 P.2d 1205

STATE of Arizona, Appellee-Respondent,

v.

David Lee FOWLER,
Appellant-Petitioner.

Nos. 1 CA–CR 5529, 1 CA–CR 6246–PR.

Court of Appeals of Arizona,
Division 1, Department A.

July 26, 1983.

Rehearing Denied Sept. 27, 1983.

Review Denied Oct. 18, 1983.

Robert K. Corbin, Atty. Gen. by William J. Schafer, III, Chief Counsel, Crim. Div., Barbara A. Jarrett, Asst. Atty. Gen., Thomas E. Collins, Maricopa County Atty. by Lynn Hamilton, Deputy County Atty., Phoenix, for appellee-respondent.

George M. Sterling, Jr., Phoenix, for appellant-petitioner.

## OPINION

JACOBSON, Judge.

The major issue raised by this appeal is whether the failure of the prosecution to advise the court or defense counsel of the apparent inability of the victim-prosecutrix to appear at trial invalidates the defendant's *Alford* plea.

The defendant, David Lee Fowler, was charged by information filed March 4, 1981 with sexual assault, a class 2 felony in violation of A.R.S. § 13–1406. Allegations of two prior felony convictions were subsequently filed and the case was set for trial on June 11, 1981. On June 10, 1981, the day before trial, the defendant, his counsel and the prosecutor met with the trial judge in an informal conference to settle *voir dire* questions. Although the victim of the sexual assault had moved to Ohio, the prosecutor had maintained contact with her and had been told by the victim that she would be available for trial on June 11, 1981. Additionally, the state had mailed her flight tickets to Phoenix and made hotel reservations. This witness was to be met at the airport in the late afternoon of June 10, 1981.

With trial imminent and the victim apparently available, the defendant expressed his interest in negotiating a plea bargain. Although the defendant claimed innocence, he entered a plea on the afternoon of June 10, 1981 in accordance with *North Carolina v. Alford,* 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970). The plea agreement provided that the defendant would plead guilty to sexual assault with one prior felo-

ny conviction and a stipulated sentence of 8.5 years imprisonment. The plea was accepted and on July 7, 1981, the agreed upon sentence was imposed.[1]

After the plea was accepted, the prosecutor was told that the victim had not flown to Phoenix as prearranged. The prosecutor attempted to call the victim's home in Ohio and friends of the witness in Phoenix. These efforts proved fruitless. Apparently because of the entry of the plea, including the stipulated sentence, the prosecutor dropped the issue and merely wrote a letter to the victim explaining what had occurred. This information was not relayed to the defense attorney until either shortly before or shortly after sentencing.

In the consolidated appeal and petition for review, the following two arguments are listed in the opening brief:

1. The willful failure of the prosecution to timely advise either court or counsel of the apparent recantation by the prosecutrix vitiates any *Alford* plea supported by that same prosecutor's avowal as to the prosecutrix's testimony at trial;

2. The court record fails to demonstrate a knowing, voluntary, and intelligent plea as to the defendant's admission of a prior conviction for enhancement or aggravation.

■ Without citation to authority, the defendant claims on appeal that the failure of the victim to travel to Phoenix amounted to recantation of her testimony by act and because the prosecutor did not immediately advise defense counsel of the failure of the victim to appear, this somehow vitiated the validity of the *Alford* plea. We reject the "recantation" argument as purely speculative. The state responds to the balance of the argument by citing *Brady v. United States,* 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970).

Brady was charged with kidnapping under a federal statute which at that time permitted the death penalty if recommended by the jury. To avoid the potential death penalty, Brady entered a plea of guilty. The statute was later found unconstitutional in *United States v. Jackson,* 390 U.S. 570, 88 S.Ct. 1209, 20 L.Ed.2d 138 (1968) on the grounds that the potential death penalty which could be imposed only by a jury, placed an undue price on the sixth amendment right to a jury trial. After *Jackson* issued, Brady argued that his plea had not been intelligently entered because of his assumption that the statute was constitutional and that he faced a potential death sentence. The Supreme Court found that the plea was validly entered using the following language:

Often the decision to plead guilty is heavily influenced by the defendant's appraisal of the prosecution's case against him and by the apparent likelihood of securing leniency should a guilty plea be offered and accepted. Considerations like these frequently present imponderable questions for which there are no certain answers; judgments may be made that in the light of later events seem improvident, although they were perfectly sensible at the time. The rule that a plea must be intelligently made to be valid does not require that a plea be vulnerable to later attack if the defendant did not correctly assess every relevant factor entering into his decision. A defendant is not entitled to withdraw his plea merely because he discovers long after the plea has been accepted that his calculus misapprehended the quality of the State's case or the likely penalties attached to alternative courses of action. More particularly, absent misrepresentation or other impermissible conduct by state agents, cf. *Von Moltke v. Gillies,* 332 U.S. 708, 68 S.Ct. 316, 92 L.Ed. 309 (1948), a voluntary plea of guilty intelligently made in the light of the then applicable law does not become vulnerable because

---

1. At the time of sentencing, the trial judge ordered that appellant be committed to the Department of Corrections. Pursuant to *State v. Gutierrez,* 130 Ariz. 148, 634 P.2d 960 (1981), appellant's sentence is modified to a sentence of imprisonment.

later judicial decisions indicate that the plea rested on a faulty premise. A plea of guilty triggered by the expectations of a competently counseled defendant that the State will have a strong case against him is not subject to later attack because the defendant's lawyer correctly advised him with respect to the then existing law as to possible penalties but later pronouncements of the courts, as in this case, hold that the maximum penalty for the crime in question was less than was reasonably assumed at the time the plea was entered. 397 U.S. at 756, 757, 90 S.Ct. 1473.

In our opinion, there is no relevant distinction between the mistake of law (the constitutionality of the death penalty statute) in *Brady,* and the mistake of fact here (that the prosecutrix would be available to testify). We therefore find *Brady* dispositive.

◼ The defendant argues, however, that since his was an *Alford* plea, (maintaining his innocence, but willing to plead because of the strength of the state's case), the result should be different. It is clear from this record that the prosecution had no knowledge that the victim would not appear at trial at the time the *Alford* plea was entered, and therefore no indication that when the prosecutor presented the strong factual basis[2] for the plea as required by *North Carolina v. Alford, supra,* that the prosecutor was guilty of any misrepresentation or other impermissible conduct. Knowledge of matters (not affecting the validity of the plea process) acquired after the plea which might indicate that the defendant would have been better off going to trial rather than entering a guilty plea, does not invalidate either an *Alford* plea or a normal plea of guilty.

In the defendant's second argument, he claims that the plea to the prior conviction

was invalid because: (1) the trial judge had made no ruling on the State's allegation of the prior conviction at the time he accepted the plea and (2) had failed to separately advise the defendant of the sentencing range to a plea of sexual assault versus sexual assault with a prior felony conviction.

The defendant was arraigned on March 9, 1981 and trial was originally set for April 27, 1981. Motions were ordered to be filed no later than April 7, 1981. While the State's first allegation of a prior conviction was timely filed on March 15, 1981, the second allegation of a prior conviction, to which appellant eventually plead guilty, was not filed until May 4, 1981.

◼ Rule 16.1, Arizona Rules of Criminal Procedure, requires that all motions, including motions to allege a prior conviction, must be filed within twenty days before the original trial date. *See State v. Superior Court,* 127 Ariz. 175, 619 P.2d 3 (1980); *State v. Birdsall,* 116 Ariz. 112, 568 P.2d 419 (1977) and *City of Tucson v. Arndt,* 125 Ariz. 607, 611 P.2d 960 (App.1980). However, the untimely filing of the motion does not preclude the prior conviction from being alleged. It merely shifts from the prosecutor to the trial court the discretion of permitting the allegation under A.R.S. § 13–604(K). *State v. Kelly,* 123 Ariz. 24, 597 P.2d 177 (1979).[3] The defendant is therefore correct that normally the trial judge would be required to exercise his discretion under A.R.S. § 13–604(K) before permitting the allegation of a prior conviction. *Cf, State v. Jones,* 119 Ariz. 479, 581 P.2d 713 (App.1978). But, this argument entirely ignores the fact that the plea agreement, in paragraph 4, specifically amended the indictment to charge the offense to which the defendant entered his plea. Under these circumstances, it was

---

**2.** This factual basis was fully supported by the victim's testimony at the preliminary hearing.

**3.** We recognize that *Kelly* was decided under former A.R.S. § 13–1649(C), the forerunner to

A.R.S. § 13–604(K). Nevertheless, because the statutes are identical in relation to the allegation of a prior conviction, we find *Kelly* still viable.

not necessary for the court to rule on the allegation of the prior conviction. *See* Rule 13.5 and *State v. Wilson,* 126 Ariz. 348, 615 P.2d 645 (App.1980).

 Finally, as to the defendant's claim that the plea to the prior conviction was not intelligently entered because he had not been separately advised of the potential punishment for sexual assault as opposed to sexual assault with a prior conviction, again we find no merit. The defendant was specifically advised of the constitutional rights he was waiving by entering his plea and was advised that these rights applied to both a trial on the charge of sexual assault and a subsequent trial on the prior conviction. This, combined with the explanation of the potential range of sentence which the defendant faced by pleading guilty to sexual assault with a prior conviction, was all that was required by Rule 17.6. As correctly noted by the State, to have advised the defendant of separate sentencing ranges would merely have confused the proceedings as the plea agreement was solely to the sexual assault with a prior conviction.

For the reasons stated, the judgment is affirmed and the sentence modified to a sentence of imprisonment and as so modified, affirmed.

CONTRERAS, J., concurs.

KLEINSCHMIDT, Presiding Judge, specially concurring:

I agree with the opinion in every respect. I am, however, so suspicious of the potential of the *Alford* plea for convicting the innocent that I want to add one comment.

Disregarding any inference that can be drawn from the failure of the key witness to attend the trial, the record here presents a fairly strong but not overwhelming case for the state.[1] Defense counsel who contemplate advising the entry of an *Alford* plea have an especially heavy responsibility to explore every avenue that may establish a defense. I cannot assume from this record that counsel did not meet that responsibility in this case.

---

1. The defendant's version of events does not establish guilt but at the same time is largely free of the patently self-serving statements that one might normally expect from a person whose freedom depends upon whether his version is accepted over the victim's. Some of what he does purport to remember is at odds with the events the victim described. The fact that the incident terminated just at the time the victim's male roommate, with whom she denied ever having had sexual relations, drove up to the house, at least suggests a motive for her to claim rape.